IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00635-DME-KLM

WISSAM HAMMOUD,

    Applicant,

v.

J. WANDS,

    Respondent.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Docket No. 1; Filed November 24, 2009] and the **Amended Application** [Docket No. 7; Filed April 14, 2010] (collectively, the "Application) filed *pro se* by Wissam Hammoud ("Applicant"). Respondent filed a response ("Answer Brief") objecting to the Application on July 20, 2010 [Docket No. 17]. Applicant filed a Traverse on August 12, 2010 [Docket No. 18]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Application has been referred to this Court for recommendation. The matter has been fully briefed and is ripe for resolution. For the reasons set forth below, the Court recommends that the Application be **DENIED**.

### I. Statement of the Case

At the time of filing, Applicant was a federal prisoner incarcerated at the Federal Correctional Institution in Florence, Colorado ("FCI-Florence").[1] *Application* [#2] at 1. The

---

[1] Applicant has since been transferred to a different federal prison facility. Although not presently incarcerated within the Court's jurisdiction, Applicant's subsequent transfer to another

conduct at issue occurred at FCI-Pekin, Illinois. Pursuant to the Application and an amendment filed thereafter, Applicant contends that he received two disciplinary convictions without the protections of due process. *Id.* at 3; *Amendment* [#7] at 1-2. Although he appears to seek expungement of his records as his primary relief, the Court notes that Applicant lost good-time credit as a result of his convictions. Given that expungement of his record would have the effect of restoring good-time credits to Applicant, the present habeas application is an appropriate means to address Applicant's disciplinary convictions. *See generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

The disciplinary convictions at issue are detailed below. First, in May 2009, Applicant was convicted by a Disciplinary Hearing Officer ("DHO") of improperly using the prison alarm system. *May 2009 DHO Report* [#17-1] at 21-23 ("First Conviction"). Specifically, on March 1, 2009, Applicant pressed the medical emergency alarm button in his cell for a dubious purpose. *Id.* at 22; *Incident Report* [#17-1] at 12. Pursuant to the First Conviction, Applicant was sanctioned with, among other things, the loss of twenty-seven days of good-time credit. *May 2009 DHO Report* [#17-1] at 22. Second, in July 2009, Applicant was convicted by a DHO of being insolent toward prison staff. *July 2009 DHO Report* [#17-1] at 34-37 ("Second Conviction"). Specifically, on March 6, 2010, Applicant raised his voice and used improper language when he was informed by prison staff that he could not make a phone call. *Id.* at 36; *Incident Report* [#17-1] at 25. A second charge of making threats toward staff was dismissed. *July 2009 DHO Report* [#17-

---

jurisdiction does not defeat this Court's authority to issue a judgment. *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) (noting that jurisdiction "is not destroyed by transfer of the petitioner and the accompanying custodial change").

1] at 36.  Pursuant to the Second Conviction, Applicant was sanctioned with, among other things, the loss of thirteen days of good-time credit.  *Id.*

The events giving rise to Applicant's First Conviction are as follows.  On March 1, 2009, Applicant pressed the medical emergency alarm button in his cell.  *May 2009 DHO Report* [#17-1] at 22.  According to the incident report, Applicant did not have a bona fide medical emergency; instead, he demanded "to talk to number one."  *Incident Report* [#17-1] at 12.  By contrast, Applicant claims that he "was in extreme pain . . . agony," and that he was informed that he could not see medical staff until the weekend was over.  *May 2009 DHO Report* [#17-1] at 21.  An inmate witness testified that Applicant's "stomach did hurt and he threw up."  *Id.*  Although not entirely clear from the Application, it appears that Applicant contends that there was insufficient evidence to convict him of the charge of pressing the medical emergency alarm button for an improper purpose.  *See Application* [#2] at 2-3.

The facts giving rise to the Second Conviction are as follows.  On March 6, 2009, Applicant pressed the medical emergency alarm button in his cell.  *July 2009 DHO Report* [#17-1] at 36.  According to the incident report, Applicant demanded "to make a fucking phone call."  *Incident Report* [#17-1] at 25.  By contrast, Applicant claims that he had a medical emergency and that the responding officer taunted and made fun of him.  *July 2009 DHO Report* [#17-1] at 35.  An inmate witness testified that Applicant was sick and when he eventually received medication, he felt better.  *Id.* at 36.  The witness also noted that Applicant "was speaking loudly, but never made any threats."  *Id.*  Although not entirely clear from the Application, it appears that Applicant again contends that there was insufficient evidence to convict him of the charge of insolence toward prison staff.  *See*

3

*Amendment* [#7] at 1-3.

Pursuant to the Application, Applicant raises two grounds for relief:

Claim I         Applicant's First Conviction was not based upon sufficient evidence. *Application* [#2] at 2-3; and

Claim II        Applicant's Second Conviction was not based upon sufficient evidence. *Amendment* [#7] at 1-3.

As a preliminary matter, Respondent contends that the Court does not have jurisdiction over the Application because Applicant is requesting expungement of his disciplinary convictions. *Answer Brief* [#17] at 9. As noted above, because expungement would necessarily restore Applicant's lost good-time credit and, therefore, impact the length of his sentence, the Court has jurisdiction to consider the Application. *See generally Preiser*, 411 U.S. at 500. As to the merits of Applicant's due process claims, Respondent contends that Applicant's disciplinary proceedings were conducted with the appropriate amount of process to satisfy constitutional requirements. *Answer Brief* [#17] at 10-13.

## II. Standard of Review

Applicant is challenging a disciplinary sanction he received impacting the length of his federal sentence pursuant to 28 U.S.C. § 2241. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Because Applicant is proceeding *pro se*, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the nonmoving party's advocate and must nevertheless deny an

application that is based on vague or conclusory allegations. *Hall*, 935 F.2d at 1110.

## III. Analysis

### A. First Conviction

As a preliminary matter, although I do not interpret the Application to involve a challenge of the overall process Applicant received during the proceedings that resulted in his First Conviction, I note that "[i]t is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the [Fifth] Amendment.'" *Howard v. BOP*, 487 F.3d 808, 811 (10th Cir. 2007) (citations omitted). However, the process that is due a prisoner in this context is limited and must only satisfy three constitutional criteria: (1) advance written notice of the disciplinary charges must be provided; (2) the opportunity to call witnesses and present evidence, when such would not be inconsistent with the prison's safety goals, must be afforded; and (3) a written opinion by the DHO of the evidence relied upon to impose a disciplinary sanction must be provided to the inmate. *Id.* at 812.

Briefly, Respondent argues that Applicant's First Conviction proceedings satisfied the requirements of due process set forth above. *Answer Brief* [#17] at 11-12. From my review of the record, I agree. Specifically, Applicant received adequate written notice of the disciplinary charges brought against him within one day of the incident. *Incident Report* [#17-1] at 12-13. Further, Applicant was afforded the opportunity to call witnesses, present documentary evidence and have staff assist him in his defense [Docket No. 17-1 at 15, 17, 19]. *May 2009 DHO Report* [#17-1] at 21-23. Finally, Applicant received a written opinion of the evidence relied upon in support of the decision. *Id.*

5

The thrust of Applicant's claim regarding his First Conviction appears to be that there was insufficient evidence to convict him of improperly using the medical emergency alarm button. *Application* [#2] at 2-3. To be upheld, the disciplinary conviction must be supported by "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). This is not an overly stringent standard. "Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S. at 455-56). "The decision can be upheld even if the evidence supporting the decision is 'meager.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

Here, I find that Applicant's disciplinary conviction was supported by sufficient evidence. The amended incident report was prepared one day after the incident and noted that rather than ask for medical assistance, Applicant demanded "to talk to number one." *May 2009 DHO Report* [#17-1] at 21-22. The incident report also noted that Applicant had "pressed the emergency alert button needlessly on multiple occasions causing staff to respond to his cell repeatedly without cause." *Id.* at 22. While an inmate witness testified that Applicant threw up on this day, he did not otherwise dispute the allegations contained in the incident report or provide any evidence about the alleged emergent nature of Applicant's medical issues. *See id.* The DHO considered Applicant's statement about his illness, the witness testimony and the incident report and noted that Applicant had already received a medical visit on the day in question and no immediate action was taken by the

6

responding medical staff member. *Id.* "This [led] the DHO to believe it was not a true emergency," particularly given that Applicant did not immediately request to see medical staff when a prison officer responded. *Id.* Therefore, according to the DHO, "evidence exists to indicate [Applicant] improperly used a security device, mechanism, or procedure." *Id.* I agree.

Considering the above, there is at least "some evidence" in the incident report and written DHO Report to justify Applicant's First Conviction. As such, the DHO's decision is supported by sufficient evidence and is not subject to being overturned.

### B.     Second Conviction

As before, although I do not interpret the Application to involve a challenge of the process Applicant received during the proceedings resulting in his Second Conviction, I briefly address this issue. Respondent argues that Applicant's Second Conviction proceedings satisfied the requirements of due process. *Answer Brief* [#17] at 11-12. From my review of the record, I agree. Specifically, Applicant received adequate written notice of the disciplinary charges brought against him within one day of the incident. *Incident Report* [#17-1] at 25-26. Further, Applicant was afforded the opportunity to call witnesses, present documentary evidence and have staff assist him in his defense [Docket No. 28, 30, 32]. *July 2009 DHO Report* [#17-1] at 34-37. Finally, Applicant received a written opinion containing the evidence relied upon in support of the decision. *Id.*

As with his First Conviction, the thrust of Applicant's claim regarding his Second Conviction appears to be that there was insufficient evidence to convict him of insolence toward prison staff. *Amendment* [#7] at 1-3. To this end, I must determine whether the Second Conviction is supported by "some evidence." *Hill*, 472 U.S. at 454. As noted

above, this is not a heightened standard of review such as *de novo*. *See Howard*, 487 F.3d at 812. Rather, the conviction will stand even if the evidence to support it is "meager." *Mitchell*, 80 F.3d at 1445 (citation omitted).

Here, I find that Applicant's disciplinary conviction was supported by sufficient evidence. The incident report was prepared one day after the incident and noted that rather than ask for medical assistance when prison staff arrived, Applicant demanded to make a phone call and called the responding prison officer a "mother fucker." *July 2009 DHO Report* [#17-1] at 34-36. While an inmate witness provided a statement that Applicant was not feeling well, he did not dispute the allegation that Applicant demanded to use the phone, raised his voice and called the responding prison officer a derogatory name. *See id.* at 36. The DHO considered Applicant's statement about his illness and his contention that the incident report was a fabrication. *Id.* He also considered the witness statement and the incident report and noted that medical staff was alerted to assist Applicant on this day. *Id.* Regardless, the DHO noted that "[b]y addressing the officer in a loud tone, [Applicant's] voice was considered to be rude behavior." *Id.* Coupled with the prison officer statement that Applicant used inappropriate language and called him a derogatory name, the DHO found that "[t]hese actions and statement are considered to be rude speech and actions, thus insolence." *Id.* While the conduct did not rise to the level of a threat, Applicant "was found to have committed the prohibited act" of insolence toward prison staff. *Id.* I agree.[2]

---

[2] Applicant also identifies a third incident report which has been expunged from his record. *See Amendment* [#7] at 1-2; *Expunged Report* [#7] at 8, 11-13. To the extent that Applicant explains in his Traverse that he raises the expunged incident report to show that conduct similar to that which led to the Second Conviction was found not to constitute the

Considering the above, there is at least "some evidence" in the incident report and written DHO Report to justify Applicant's Second Conviction. As such, the DHO's decision is supported by sufficient evidence and is not subject to being overturned.

## IV. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief under 28 U.S.C. § 2241. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED** and that the case be **dismissed with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have fourteen (14) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

charge of insolence on a different occasion, his argument is rejected. *See Traverse* [#18] at 2-3. First, the DHO who expunged the incident report on rehearing noted that the conduct supported finding that Applicant had been insolent but opted not to sanction Applicant. *See Expunged Report* [#7] at 12. Second, because the question here is not whether the DHO who levied the Second Conviction made the correct or fairest decision, but only whether his decision was supported by some evidence, the decision of one DHO involving similar conduct does not control the analysis, particularly given that the DHO who expunged the incident report found that there was some evidence of Applicant's insolence, but decided not to convict him. *See id.*

9

DATED: August 24, 2010

> BY THE COURT:
> /s/ Kristen L. Mix
> U.S. Magistrate Judge
> Kristen L. Mix