# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00635-DME-KLM

WISSAM HAMMOUD,

    Applicant,

v.

J. WANDS,

    Respondent.

## ORDER ADOPTING RECOMMENDATION OF MAGISTRATE

    Petitioner Wissam Hammoud filed this application for habeas corpus pursuant to 28 U.S.C. § 2241, arguing that there was insufficient evidence to sustain two prison disciplinary convictions. [Doc. 1; Doc. 7.] Magistrate Judge Mix recommended dismissing the petition on the ground that Hammoud is not entitled to relief under 28 U.S.C. § 2241. Hammoud filed a timely objection. [Doc. 20.] Reviewing the Recommendation de novo in light of those objections, 28 U.S.C. § 636(b)(1)(C), the Court adopts the recommended disposition and orders that Hammoud's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 be denied and the action be dismissed with prejudice.

### I. Background

    While incarcerated at the Federal Correctional Institution in Florence, Colorado, Hammoud received two disciplinary convictions. The first conviction was sustained in May of 2009 for improperly using the prison alarm system. The first conviction alleged that on March 1, 2009, Hammoud pressed the medical emergency alarm button in his cell for a dubious purpose.

According to the incident report, Hammoud did not have a bona fide medical emergency. He instead demanded "to talk to the number one." [Doc. 17, Attach. B, at 12.] Hammoud argues that he "was in extreme pain . . . agony" and that he was informed that he could not see medical staff until the weekend was over. [Doc. 17, Attach. F, at 21.] An inmate witness testified that Hammoud did throw up on that day. [Id. at 22.] A disciplinary hearing was held, and Hammoud was convicted. For that conviction, Hammoud was sanctioned with, among other things, the loss of twenty-seven days of good-time credit.

The second conviction was sustained in July of 2009 for being insolent toward prison staff. This conviction alleged that Hammoud raised his voice and used improper language when he was informed by prison staff that he could not make a phone call.[1] This second conviction alleged that on March 6, 2009, Hammoud again pressed the medical emergency alarm button in his cell. According to the incident report, Hammoud demanded "to make a fucking phone call." [Doc. 17, Attach. G, at 25.] Hammoud claims, in contrast, that he had a medical emergency for which the responding officer taunted and made fun of him. (Objections at 2.) An inmate witness testified this time that Hammoud was sick, but he eventually received medication, which made him feel better. [Doc. 17, Attach. K, at 36.] That witness also explained that Hammoud "was speaking loudly, but never made any threats." [Id.] For this conviction, Hammoud was sanctioned with, among other thing, the loss of thirteen days of good-time credit.

Although Hammoud seeks expungement of his records as his primary relief, the Court notes that Hammoud lost good-time credit as a result of his convictions. Respondent Wands contends that this Court does not have jurisdiction over Hammoud's application because he is

---

[1] Hammoud was also charged with making threats toward staff for this incident, but that charge was dismissed.

requesting expungement of his disciplinary convictions.  [Id.]  But because expungement of his records would have the effect of restoring good-time credits, the present habeas application is an appropriate means to address Hammoud's disciplinary convictions.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to . . . a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

## II. Analysis

Because Hammoud is proceeding pro se, this Court must construe his application liberally.  Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Therefore, this Court carefully weighs the need for Hammoud to present constitutional claims against any procedural defects caused by his pro se status.  Clark v. Tansy, 13 F.3d 1407, 1409 (10th Cir. 1993).  Accordingly, this Court interprets Hammoud's application as a due process challenge to the sufficiency of the evidence supporting his convictions.

To be upheld, a disciplinary conviction must be supported by some evidence. Superintendant, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985).  This standard is not overly stringent: "'Ascertaining whether [the "some evidence"] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'"  Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 812 (10th Cir. 2007) (quoting Hill, 472 U.S. at 455–56).  "The decision can be upheld even if the evidence supporting the decision is 'meager.'"  Mitchell v. Maynard, 80 F.3d 1433, 1445 (10th Cir. 1996) (quoting Hill, 472 U.S. at 457).

3

This Court agrees with the conclusions of the Magistrate Judge that both of Hammoud's disciplinary convictions are supported by some evidence, which is sufficient to justify the convictions. Regarding the first conviction, the incident report, prepared one day after the incident, noted that after Hammoud pressed the medical emergency alarm button, instead of asking for medical assistance, he demanded "to talk to number one." The incident report also noted that he had "pressed the emergency alert button needlessly on multiple occasions causing staff to respond to his cell repeatedly without cause." While an inmate witness testified that Hammoud threw up that day, the witness did not dispute any of the allegations in the incident report or provide evidence about whether or not Hammoud's medical issues amounted to an emergency. During Hammoud's disciplinary hearing, the Disciplinary Hearing Officer (DHO) considered Hammoud's statement about his illness, the witness's testimony, and the incident report. The DHO also considered the fact that Hammoud had already received a medical visit on the day in question and no immediate action was taken by the responding medical staff member. This led the DHO to believe that Hammoud did not have a true medical emergency. Both the DHO and the Magistrate Judge concluded that evidence exists indicating that Hammoud improperly used the medical emergency alarm button, and this Court agrees. There is at least some evidence to justify Hammoud's first conviction, and, therefore, the DHO's decision is not subject to being overturned.

Regarding the second conviction, the incident report, again prepared one day after the incident, noted that after Hammoud pressed the medical emergency alarm button, instead of asking for medical assistance, Hammoud demanded to make a phone call and called the responding officer a "motherfucker" when told he could not make a phone call. An inmate

witness testified that Hammoud was not feeling well, but again the witness did not dispute the allegations that Hammoud demanded to use the phone, raised his voice, and called the responding officer a derogatory name. During the hearing for this charge, the DHO considered Hammoud's statement about his illness, Hammoud's contention that the incident report was a fabrication, the responding officer's statement, and the witness's statement. The DHO also considered the fact that medical staff did assist Hammoud on the day of this incident. But regardless of whether this incident amounted to a medical emergency, Hammoud's actions were still insolent towards prison staff. Again both the DHO and the Magistrate Judge concluded that evidence exists to justify Hammoud's conviction for insolence towards prison staff, and again this Court agrees. There is at least some evidence to justify Hammoud's second conviction, and, therefore, the DHO's decision is not subject to being overturned.

### III. Conclusion

Accordingly, the Court ADOPTS the Recommendation of the Magistrate Judge and orders that Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 be DENIED. Petitioner's action is thus DISMISSED with prejudice, and judgment shall be entered accordingly.

Dated this   27th   day of   September  , 2010.

BY THE COURT:

*s/ David M. Ebel*

U. S. CIRCUIT COURT JUDGE